IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CALVIN E. BAKER,
    Plaintiff,

vs.                              Case No.:  3:19cv561/TKW/EMT

CORIZON HEALTH
and DR. NICHOLAS DELGADO,
    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Calvin E. Baker ("Baker"), an inmate of the Okaloosa County Jail proceeding pro se and in forma pauperis, commenced this case by filing a complaint under 42 U.S.C. § 1983 (ECF No. 1). Presently before the court is Baker's Second Amended Complaint (ECF No. 25). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Upon consideration of Baker's pleadings, the undersigned concludes he has failed to state a plausible federal claim against Defendants. Therefore, his federal claims should be dismissed, and the court should decline to exercise supplemental jurisdiction over his state law claims.

Page **2** of **18**

I.  BACKGROUND

Baker names two Defendants in his Second Amended Complaint: (1) Corizon Health, a private company which contracts with Okaloosa County to provide medical services to inmates of the Okaloosa County Jail, and (2) Dr. Nicholas Delgado, an employee of Corizon (ECF No. 25 at 1–2).[1]  Baker asserts Eighth Amendment claims of deliberate indifference to his need for medical treatment for granulomatosis with polyangiitis (Wegener's disease).  Baker also asserts state law medical negligence/malpractice claims.  Baker seeks injunctive relief and monetary damages.

II.  FAILURE TO STATE A FEDERAL CLAIM UNDER § 1983

A.  Statutory Screening Standard

Because Baker is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines that the complaint fails to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A.  The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir.

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system rather than the pagination of the original documents.

Case No. 3:19cv561/TKW/EMT

1997). The allegations of the complaint are taken as true and construed in the light most favorable to Baker. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).

The court must consider the operative pleading (in this case, the Second Amended Complaint) in its entirety, and the court will also consider facts included in Baker's initial Complaint (ECF No. 1) and First Amended Complaint (ECF No. 15) where those facts clarify the meaning of the allegations of the Second Amended Complaint.

The court will also consider other sources which courts ordinarily examine when ruling on a 12(b)(6) motion, in particular, documents attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal . . . ."). The district court may also consider documents referenced in the complaint, even if they are not physically attached, if the documents' contents are

alleged in a complaint and the authenticity of the document is not subject to challenge, so long as the documents meet the centrality requirement. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also, e.g.*, *Basson v. Mortg. Elec. Reg. Sys., Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018) ("The district court may also consider documents referenced in the complaint, even if they are not physically attached, if the documents are (1) central to the complaint and (2) no party questions their authenticity.") (unpublished but recognized as persuasive authority).

To survive statutory screening under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quotation marks and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation marks and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

B.  Baker's Factual Allegations

As noted above, the court includes factual allegations from Baker's Second Amended Complaint (*see* ECF No. 25 at 3–7) and any clarifying facts included in his initial and First Amended Complaints (ECF Nos. 1, 15). The court also includes facts from the medical records submitted by Baker with his motion for temporary restraining order ("TRO") (ECF No. 26), because those documents are referenced in the Second Amended Complaint, they are central to the complaint, and there can be

no question as to their authenticity. *See, e.g., Moore v. Judicial Inquiry Comm'n of the State of Ala.*, 200 F. Supp. 3d 1328, 1331 n.3 (M.D. Ala. 2016) (considering, at motion to dismiss stage, documents cited in defendants' motion to dismiss and plaintiff's motion for preliminary injunction); *see also, e.g., Moragas v. Sch. Bd. Of Miami-Dade Cnty.*, No. 19021517-Civ-Scola, 2019 WL 3252229, at *1 n.2 (S.D. Fla. July 19, 2019) (considering, at motion to dismiss stage, letter attached to plaintiff's motion for TRO, because it was referenced in and central to the complaint, and its authenticity was not in dispute) (citing *Basson*, 741 F. App'x at 771)).

Baker began experiencing problems with his vision in September of 2018 (Second Amended Complaint at 3). He was seen by Defendant Dr. Delgado, who advised him he would be referred to an eye specialist (*see* Second Amended Complaint at 3; First Amended Complaint at 5). Approximately three weeks later, Baker was seen by Dr. Planchard at the Emerald Coast Eye Institute (First Amended Complaint at 5). Baker received several diagnostic tests, including blood tests, and was diagnosed with granulomatosis with polyangiitis (Wegener's) and optic neuropathy in his right eye, likely secondary to the granulomatosis with polyangiitis (First Amended Complaint at 6; Second Amended Complaint at 7).

Dr. Planchard saw Baker again on January 31, 2019 (Dr. Planchard's report indicates he also saw Baker the previous month) (Second Amended Complaint,

incorporated report of Brian S. Planchard, M.D., dated 01/31/2019).  Dr. Planchard recommended an orbital biopsy by another specialist, Dr. Poppell (*id.*).  Dr. Planchard also prescribed prednisone until Baker could be switched to a steroid-sparing agent by a rheumatologist (*id.*).  Dr. Planchard noted that the Jail was "working on referring him to one [a rheumatologist]," and that "one [a rheumatologist] in Pensacola refused to see him" (*id.*; *see also* Complaint at 6).

Baker was seen by Dr. Poppell on March 14, 2019, and he had received the biopsy by then (Second Amended Complaint, incorporated report of Samuel E. Poppell, M.D., dated 03/14/2019).  With respect to Baker's chronic eye inflammation, Dr. Poppell determined the following:

> Biopsy of orbits normal; no inflamation [sic] found.  Has positive lab findings of Weigners [sic] granulomatosis.  Even though the orbital biopsy was negative, the inflammation is in the posterior orbit that responded to steroids.  We think he has Wegeners granulomatosis and will need heavier imuno suppresion [sic].  Recommend strongly that patient have a rheumatology consult to help direct this treatment.

(*id.* (punctuation and capitalization added for clarity)).

One week later, on March 21, 2019, Baker was seen by Dr. Kirby, a rheumatologist (Second Amended Complaint, incorporated consultation form completed by Dr. Kirby, Rheumatologist, dated March 21, 2019).  The summary of Dr. Kirby's findings and recommendations was the following:

Page **8** of **18**

> Ocular findings from notes and labs suggestive of GPA [granulomatosis with polyangiitis] with ocular involvement. Possible sinus involvement on MRI. Complaints of S[hortness] O[f] B[reath] need to be evaluated with CT for pulmonary involvement. Will discuss finding with Dr. Poppell. Depending on degree of involvement may consider MTX [Methotrexate], Cylexan, or Rituxan.

(*id.*). Dr. Kirby recommended several urine and blood tests, including a complete blood count (CBC), comprehensive metabolic panel (CMP), urinalysis, urine spot protein and creatinine test, Hepatitis B surface antibody test, antigen core antibody test, HIV test, Hepatitis C test, and Quantiferon Gold (*id.*).

One week later, on March 29, 2019, Baker received a CT scan at Crestview Open MRI (*see* Motion for TRO, attached report of Dr. John C. Tomberlin, M.D.). Dr. Tomberlin provided the following impressions:

> 1. No acute infiltrates.
>
> 2. Minimal arterial sclerosis.
>
> 3. Minimal thoracic spondylosis.
>
> 4. Soft tissue fullness along the supraglottic region of uncertain significance and may in fact represent a spurious finding.
>
> 5. Fatty liver.

(*id.*).

In June of 2019 (two months after Baker commenced this lawsuit), Baker was seen again by Dr. Kirby, the rheumatologist, for a follow up (*see* Motion for TRO,

Case No. 3:19cv561/TKW/EMT

attached consultation form completed by Dr. Kirby, Rheumatologist, dated June 10, 2019). Dr. Kirby's summary of findings and recommendations was the following:

> Eyes look clear. <u>Needs f[ollow]/u[p] with Dr. Poppell</u>. Continues to have diffuse pain that seems to be unrelated to Wegener's. Pain persisted on high-dose steroids with no change as the prednisone tapered. Still c[omplains]/o[f] S[hortness] O[f] B[reath] but CT normal. Recommend f[ollow]/u[p] with P[rimary] C[are] P[hysician], <u>possible eval by pulmonary</u>. Will taper prednisone further . . . . Continue Methotrexate . . . and F[olic] A[cid] . . . .

(*id.*) (emphases in original). Dr. Kirby recommended more blood and urine tests, and a follow-up appointment in two months (*id.*).

    C.    <u>Discussion</u>

When brought by convicted prisoners, claims of deliberate indifference to serious medical needs proceed under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013). Pretrial detainees, however, must proceed under the Due Process Clause of the Fourteenth Amendment. *See Dang by and through Dang v. Sheriff, Seminole Cnty. Fla.*, 856 F.3d 842, 849–50 (11th Cir. 2017) (citations omitted). Nevertheless, the minimum standard for providing medical care to a pretrial detainee is identical to the minimum standard required by the Eighth Amendment for a convicted prisoner; therefore, the claim is analyzed under the decisional law of both Amendments. *Id.* at 850 (citation omitted).

Page **10** of **18**

Stating a claim of inadequate medical treatment requires satisfying two minima (from which the case law has ultimately derived four requirements). First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *See Wilson*, 501 U.S. at 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphases in original)).

In the context of denial of medical treatment, each of these minima has been more specifically described as encompassing two subsidiary requirements. To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811

(1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Second, it is necessary to demonstrate that the response made by the public official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law, *Estelle*, 429 U.S. at 105–06. Conduct that is more than merely negligent includes: "(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).

A plaintiff may also establish deliberate indifference by showing "[a] complete denial of readily available treatment," or that the defendants "delay[ed] necessary treatment for non-medical reasons." *Bingham*, 654 F.3d at 1176. Where the case turns on an alleged delay in providing medical care, rather than the type of medical care provided, courts should consider: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (citation omitted).

To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," *Estelle*, 429 U.S. at 105, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and . . . draw[ing of] the inference," *Farmer*, 511 U.S. at 837.

In the prison context, the court must "distinguish between evidence of disputed facts and disputed matters of professional judgment." *Beard v. Banks*, 548 U.S. 521, 530, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006). A medical decision not to pursue a particular course of diagnosis or treatment is a classic example of a matter for medical judgment, an exercise of which does not represent cruel and unusual punishment. *See Estelle*, 429 U.S. at 107–08. Further, a mere disagreement between an inmate and the prison's medical staff as to the course of treatment does not establish deliberate indifference. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted). Moreover, "[w]here a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. Dekalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A municipality, or functional equivalent thereof, is not liable under section 1983 for injuries caused solely by its employees, *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004), and may be held liable only when the execution of a government policy or custom causes the injury.[2] *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). There are several different ways of establishing municipal liability under § 1983. A municipality may be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 661, 694—95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *McCusik v. City of Melbourne*, 96 F.3d 478, 483 (11th Cir. 1996). Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 n.11 (11th Cir. 1991). And a municipality may be held liable "on the basis of ratification when a subordinate

---

[2] A governmental entity having custody of an inmate bears an affirmative obligation to provide the inmate with adequate medical care. Where the government delegates that function to a private medical provider, and the private party voluntarily assumes it by contract—as did Defendant Corizon Health—the private party becomes a state actor within the meaning of § 1983. *See West v. Atkins*, 487 U.S. 42, 54–57, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) ("When a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state. In so doing, it becomes the functional equivalent of the municipality.").

public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). So not all theories of municipal liability under § 1983 require (or depend on) a single final policymaker. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016).

Here, the fact that Baker was diagnosed with granulomatosis with polyangiitis (Wegener's) satisfies the "serious medical need" element of a Fourteenth Amendment claim. However, Baker has not pleaded factual content that allows the court to draw the reasonable inference that Dr. Delgado was deliberately indifferent to Baker's need for medical treatment for his condition. Baker admits that over the past ten (10) months, he has received numerous tests to diagnose and monitor his condition (i.e., blood tests, urine tests, CT scan), initial and follow-up consultations with three specialists, and medications prescribed by those specialists. Baker complains about delays in receiving the consultations and prescriptions, but he does not allege any facts which plausibly suggest those delays were the result of Dr. Delgado's deliberate indifference. Indeed, Baker attributes one of the delays to "negligence" on the part of "Corizon employees" for their failure to provide one of the specialists with test results prior to Baker's appointment (*see* Second Amended Complaint at 4). Baker's factual allegations fail to state a plausible Fourteenth

Amendment claim of deliberate indifference as to Defendant Dr. Delgado; therefore, the claim should be dismissed pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

With respect to Defendant Corizon Health ("Corizon"), Baker alleges Corizon has a policy of not providing pre-trial detainees with medical care that is costly, unless the inmate's condition is life-threatening (*see* Second Amended Complaint at 4). However, because Baker has not stated a plausible claim of constitutionally inadequate medical treatment with respect to Dr. Delgado, Baker cannot establish liability on the part of Corizon. *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."); *see also Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right.").

III. STATE LAW CLAIMS

Baker's state negligence claims should be dismissed without prejudice to his pursuing them in state court. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th

Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. *See Baggett*, 117 F.3d at 1353 (citation omitted). The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that Baker's state law claims should be dismissed to permit him to pursue them in a more appropriate forum. While it would be convenient for Baker to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of Baker's state claim(s) and delaying justice in other cases. Furthermore, the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. Moreover, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C.

§ 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); *Artis v. District of Columbia*, — U.S. —,138 S. Ct. 594, 199 L. Ed. 2d 473 (2018). Thus, Baker's state law claims are tolled while they are pending in federal court, and Baker has thirty (30) days after dismissal by the federal court to re-file in state court. *See Artis, supra*; *Krause v. Textron Fin. Corp.*, 59 So. 3d 1085 (Fla. 2011). Therefore, Baker's pursuit of any state law claim in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction.

IV.   CONCLUSION

Accepting the allegations of Baker's complaint as true, and liberally construing them in the light most favorable to Baker, the undersigned concludes that Baker's allegations fail to give rise to a plausible Fourteenth Amendment claim against Defendant Dr. Delgado or Defendant Corizon. Therefore, the undersigned recommends that the District Judge dismiss Baker's federal claims with prejudice, and dismiss Baker's state law claim without prejudice to his pursuing them in state court.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's federal claims be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1);

2. That Plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE** to his pursuing them in state court; and

3. That all pending motions be **DENIED** as moot.

At Pensacola, Florida this 26th day of July 2019.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**